This is a mandamus proceeding by the plaintiff who seeks to compel the Secretary of State to promulgate as a law House Bill 105, entitled "An Act to prohibit discrimination against any employee or employees because of membership or nonmembership in a labor organization; to prohibit exclusion from employment in this State of any person or persons on account of membership or non-membership in a labor organization; to prohibit any requirement that any person pay dues to a labor organization as a condition to obtaining or continuing in any employment in Louisiana; to set forth a declaration of Policy; to provide for existing contracts; to make violations of this act a misdemeanor; to provide penalties therefor; and to repeal all laws or parts of laws inconsistent or in conflict therewith."
Plaintiff alleges in his petition that he is a citizen and taxpayer of the State of Louisiana, and that he is a business man employing a number of persons in the operation of his business in this state; also, that he is a member of the House of Representatives of the Legislature of this State, elected from Acadia Parish, and that as a member of the Legislature, he introduced in the House of Representatives the abovementioned bill; that said bill was duly passed by the said House of Representatives at its regular session in 1946, and in due course was duly passed by the Senate. He further alleges that after said bill was duly passed by both houses of the Legislature, it was sent to the Governor for his approval and was received by the Governor on June 27, 1946, at 3:12 p.m.; that the Governor retained the custody and control of said bill from 3:12 p.m., June 27, 1946, until it was delivered to the House of Representatives on July 8, 1946, shortly after said House convened at about 2 p.m. on that date.
The plaintiff alleges that the Governor did not veto the said bill within the time and in the manner required by the Constitution, which specifically limits the period within which the Governor must approve or veto a bill to 10 calendar days. A copy of the said H.B. 105 is annexed to the petition and made a part thereof. The plaintiff alleges that the said bill became a law under the provisions of Art. V, Sec. 15 of the Constitution because of the failure of the Governor to veto the bill within the time prescribed by that article and section of the Constitution. He therefore prays for a mandamus to issue compelling the Secretary of State to promulgate said bill, and ordering that said bill have the effect of law as of 12 o'clock noon on the 20th day after the Legislature adjourned.
The Secretary of State appeared through the Attorney General and filed exceptions of no right and no cause of action, which exceptions by agreement were referred to the merits. The defendant also filed an answer in which he admitted most of the allegations of fact contained in plaintiff's petition, but denied that said H.B. 105 became a law, but on the contrary, averred that said bill was vetoed by the Governor within the time prescribed by the Constitution.
Evidence was taken and the matter was submitted to the court, whereupon the trial *Page 518 
judge sustained the exceptions of no right and no cause of action, and dismissed plaintiff's suit. The case is before us on an appeal by the plaintiff from the judgment of dismissal.
The exception of no right of action raises the question of whether or not the plaintiff has a right to prosecute this suit and seek the remedy by mandamus which he prays for in his petition. Article 15 of the Code of Practice provides that an action can only be brought by a person who has a real and actual interest which he pursues, but as soon as that interest arises, he may bring his action. There are many cases in the reports of our state touching on the right of a citizen and taxpayer to bring a suit against a public official to enjoin or mandamus him from doing or forcing him to do an act which plaintiff claims he should not do or should do in his official capacity. A few of these cases will be mentioned.
In the case of City of Alexandria et al. v. Police Jury of Rapides Parish et al., 139 La. 635, 71 So. 928, Ann.Cas.1918A, 362, certain citizens alleging that they were citizens, voters and taxpayers of Rapides Parish undertook took to appeal from a judgment which annulled an election on the prohibition question, and their interest in obtaining an appeal from the judgment was brought in question. They alleged that they would suffer injury and loss as citizens, property owners and taxpayers because, if prohibition (which they claimed was voted at the election) was upheld, property values in the parish would be increased; that the criminal expenses of the parish would be decreased; that taxation would be reduced, and the material prosperity of the plaintiffs and the people of the parish would be greatly enhanced. The court held that the pecuniary interest alleged by plaintiffs was contingent and speculative and was not such a real and actual interest as is required by the Code of Practice for the bringing of an action.
[1] In the case of State ex rel. Schoeffner v. Dowling,158 La. 706, 104 So. 624, 626, the court held that a citizen and taxpayer cannot by mandamus enforce the performance of a duty by a public officer unless he shows some special and peculiar interest apart from the interest which the general public has in the subject matter. This was an effort by the relator to force the state health officer to appoint a parish board of health which an act of the Legislature required in default of such appointment by the police jury. The only interest of relator disclosed by his petition was that he had a pecuniary interest in the preservation and promotion of the health and welfare of the parish, and he alleged that his interest exceeded in value the sum of $2,000. In denying the relator's right to prosecute the mandamus suit, the Supreme Court made the following statement with reference to the law as it pertains to the right of a citizen and taxpayer to maintain a suit by mandamus against a public official: "There ought to be, it would seem, no divergence of opinion on this question, but it must be admitted that there is some conflict of views among the law-writers and some lack of harmony in the jurisprudence. But we think the great weight of authority is decidedly to the effect that, without some peculiar, special, and individual interest, a citizen, though he be a taxpayer, has no standing in court to champion a cause or subject-matter which pertains to the whole people in common, nor has an individual citizen a legal standing in court to enforce the performance of a duty which a public officer owes to the public at large, unless it clearly appears that such individual citizen has a special and peculiar interest in the performance of such duty apart from the interest which he has as one of the general public in having the duty performed."
Beginning with the case of Borden et al. v. Louisiana State Board of Education et al., 168 La. 1005, 123 So. 655, 67 A.L.R. 1183, the Supreme Court seems to have begun a clear ruling that a taxpayer has a right of action to contest the expenditure of public funds belonging to the state where the taxpayer claims that a public official is about to expend funds under an alleged unconstitutional act, and the court there indicated that the earlier case of *Page 519 
Sutton v. Buie et al., 136 La. 234, 66 So. 956, L.R.A.1915D, 178, should not be followed in that respect.
Subsequently, in the case of Graham et al. v. Jones et al.,198 La. 507, 3 So.2d 761, the court definitely recognized the right of taxpayers to enjoin a state officer from expending state funds under an alleged unconstitutional act, and in that case made the following statement: "Whatever may have been the effect of the former jurisprudence of this State, as reflected in Moss v. Hall, 133 La. 351, 63 So. 45, and Sutton v. Buie,136 La. 234, 66 So. 956, L.R.A. 1915D, 178, in denying a taxpayer the right to enjoin a state official from disposing of state funds under an unconstitutional act, it is now well settled that a taxpayer does have that right."
The same ruling was announced and followed in the very recent case of Stewart et al. v. Stanley, Atty. Gen. et al.,199 La. 146, 3 So.2d 531.
[2] Applying the principles announced in the above cases to the question of plaintiff's right in this case to bring this suit, it is obvious that he cannot maintain the action merely on the ground that he is a citizen and taxpayer for the reason that, as a citizen, he has no more interest in having this bill promulgated as a law of the state than any other citizen who might be similarly affected by the law. He does not seek to prevent or control the expenditure of any public funds belonging to the state and which might affect him as a taxpayer.
However, plaintiff does allege that he is a member of the Legislature and introduced the bill in question. As introducer and sponsor of the bill in the Legislature, it might be said that he has a special and peculiar interest in asking that this bill be now promulgated into law, as he claims that it passed both houses of the Legislature and became a law because of the failure of the Governor to veto it within the time prescribed by the Constitution. If he has not sufficient interest in seeing that this is done, the question might well be posed as to who is the proper person to invoke the jurisdiction of the courts in order to have the validity of the Governor's veto tested.
As an employer of labor, plaintiff may be affected by the provisions of the bill if it is declared to be a law. It is said that his interest in this respect is contingent and speculative. However, the bill itself indicates that its purpose is to lay down certain policies and rules which are to have effect on all subsequent contracts of employment between the employer and the employee, and the effect of these policies and rules would be immediate and general throughout the State if the provisions of the bill become a law. It has often been said and is well recognized that good relations between an employer and his employees have a marked pecuniary value, and the success of the employer's business depends very largely on this good relationship.
While there may be some room for doubt on the question of the right of plaintiff to bring this action, if we concede that he has such a right, we are satisfied from our study of the case that the exception of no cause of action is well founded, and we prefer to base our opinion and decree on that exception.
Plaintiff annexed to his petition a photostatic copy of the bill which bears the veto of the Governor in the following form:
"Baton Rouge, La. July 7, 1946
For the reasons assigned in my message of this date, returning this bill to the House of Representatives, I hereby veto House Bill No. 105.
J.H. Davis Gov. of Louisiana"
[3] For the purpose of considering the exception of no cause of action, the allegations in the petition, as well as the contents of the bill and the veto of the Governor, must be accepted as true. Therefore, the facts show that this bill was presented to the Governor on June 27, 1946, at 3:12 p.m., and he vetoed the bill on July 7, 1946. There is nothing in the record to show at what hour on July 7 the Governor actually vetoed the bill.
[4] Section 15 of Article V of the present Constitution provides in the first paragraph thereof that if the Governor approves a bill, he shall sign it; if not, he shall *Page 520 
return it with his objections to the house in which the bill originated, whereupon both houses of the Legislature shall proceed at once to pass on the bill over his veto. The second paragraph of this section of the Constitution provides in clear and unambiguous language that the Governor shall have 10 calendar days after a bill is presented to him within which to approve or veto it, and any bill approved or not vetoed within said period shall be a law. It is further required that the date and hour when the bill is delivered to the Governor shall be endorsed thereon.
It will be seen from what is said above that there is no provision in the above mentioned section of the Constitution requiring the Governor to return the bill to the House in which it originated within 10 calendar days. It is very clear from paragraph 2 of this section that the Governor is given 10 calendar days after the bill is presented to him in which to veto it. It would be stretching the clear meaning of the language used in the second paragraph of this section to hold that he is required to return the bill within 10 calendar days. In other words, it is the obvious intention of this section of the Constitution to give the Governor 10 calendar days from the hour on which he receives the bill in which to consider it and either approve or veto it. The very purpose in requiring the hour at which the Governor receives the bill to be endorsed upon it is to fix a definite period from which his time of deliberation is to begin to run against him.
[5] To veto a bill means to disapprove it. Black's Law Dictionary defines veto as: "The refusal of assent by the executive officer whose assent is necessary to perfect a law which has been passed by the legislative body, and the message which is usually sent to such body by the executive, stating such refusal and the reasons therefor." According to the bill, the Governor actually wrote his veto or disapproval of the bill and his message accompanying his veto on July 7, 1946.
[6] The first paragraph of said section 15 requires the Governor to return the bill to the house in which it originated if he vetoes the bill, and such House is required to re-consider the bill at once. The Constitution presumes that the Governor will perform his sworn duty and return the bill after he vetoes it so as to give the Legislature an opportunity to reconsider the bill at once. The Governor performed his constitutional duty in this case and returned the bill to the House in which it originated in ample time for it to reconsider the bill at the earliest practicable time — that is at its first session after the bill was vetoed. The Constitution places a duty on the Governor to return the bill after he vetoes it in the same section and article that it places the duty on the legislators to reconsider the bill at once after it is returned. To suggest that under this interpretation a Governor could fail to return a bill and thereby prevent the Legislature from reconsidering it is to say that the executive may violate his oath to support the Constitution. No such presumption can be indulged, and no such situation exists in this case.
In our opinion, this construction of Section 15 of Article V of the Constitution is fortified by a comparison of similar provisions in the previous constitutions of the State. The Constitutions of 1812, 1845, 1852 and 1864 provided that the Governor should return the bill within 10 days (Sundays excepted) after the bill is presented to him. Beginning with the Constitution of 1868, it was provided that if the Governor did not return the bill within 5 days after it was presented to him, the bill would then become a law. This same provision was contained in the Constitutions of 1879, 1898 and 1913. It will be noticed that in all these constitutions, previous to the present Constitution, the Governor was required to return the bill within a specified period. However, in the Constitution of 1921, as has already been stated, there is no specific time fixed in which the Governor is required to return the bill, but there is a specific time in which he must either approve or veto the bill, and Sundays are not excepted.
[7] As Sundays are not excepted in the number of calendar days in which the Governor is given to veto a bill, Sundays *Page 521 
must be included in the computation of this time. In the case of State ex rel. State Pharmaceutical Ass'n et al. v. Michel, Sec. of State, 52 La. Ann. 936, 27 So. 565, 49 L.R.A. 218, 78 Am.St.Rep. 364, the question was presented as to whether or not the Governor had returned a bill within the 5 day period prescribed by the Constitution of 1898. If Sunday was not to be included in the 5 day period, the bill was returned by the Governor within the proper period of time. The court in reviewing the question of whether or not Sunday was to be included in the computation of the 5 day period stated that there is a rule of general but not universal acceptance to the effect that where a limitation of time is fixed within which a particular act is required to be done, if done at all, after which the doing of the act would be without effect, if the time limitation exceeds a week, an intervening Sunday is to be included in the computation; if less than a week, Sunday is to be excluded. It was therefore held in that case that since the Governor was given only 5 days (less than a week) to return a bill, Sunday was not to be counted in the computation of that period. The court made reference to the fact that in the constitutions prior to 1868, the time was fixed at 10 days, but Sundays were specifically excepted, indicating that Sundays would not have been excepted had the Constitution not specifically so provided.
[8] Therefore, it is reasonable to conclude that the framers of the Constitution of 1921 were well aware of this ruling, and in fixing the period in which the Governor is given the right to approve or veto a bill, no exception was made for Sundays, notwithstanding the fact that the period extended over a period of more than a week. The addition of the word "calendar" preceding "days" also has significance which, taken in connection with the requirement that the hour of reception by the Governor should be endorsed on the bill, indicates very clearly that the present Constitution gives the Governor ten 24 hour periods from the time he receives the bill in which to approve or veto it. These 24 hour periods begin at the hour on which he receives the bill. Consequently, in this case, the Governor had ten 24 hour periods from June 27, 1946, at 3:12 p.m., in which to veto this bill, or until July 7, 1946, at 3:12 p.m. He vetoed the bill on July 7, 1946, but the hour of that day on which he actually wrote his veto does not appear in the record. However, the Governor is presumed to have done his duty as prescribed by the Constitution of the State, and, therefore, in the absence of any proof on that point, it must be presumed that he vetoed the bill prior to 3:12 p.m. on July 7, 1946.
For the reasons assigned, the judgment which maintained the exception of no cause of action and dismissed plaintiff's suit is hereby affirmed at the cost of plaintiff in both courts. *Page 522