MARVIN, Judge.
In these consolidated mandamus actions, the Levee Board appeals judgments ordering it to pay executory money judgments rendered for lands taken and used for levee purposes along the Mississippi River. See Pillow v. Board of Com’rs, 425 So.2d 1267 (La.App. 2d Cir.1982), writ denied, 445 So.2d 1225 (La.1984).[1] We amend and affirm. LSA-Const. Art. 6, § 42.[2]
The Board asserts that plaintiffs have no right and no cause of action for mandamus, that mandamus proceedings were improperly employed, and that the judgments for the fair market value of the lands taken and used and for the full extent of the landowner’s loss (as these judgments are), “shall be compensated ... only when ... the Legislature, the Levee Board, or the federal government appropriates the funds therefor.” See LRS 38:281, adopted by Act 314 of 1978.
We made the above quoted observation in Pillow, supra, at p. 1273, in support of our holding that the 1978 Act required that the landowner should be compensated to the full extent of the loss and for the fair market value of the lands taken and used by the Levee Board. See also Act 676 of 1979. We there affirmed the judgment for Pillow for $333,000. That judgment and the judgment in the consolidated action are now executory and are judgments for lands actually used or destroyed for levee purposes within the meaning of LSA-Const. Art. 6, § 42. Plaintiffs base their mandamus actions on this constitutional provision.
LSA-Const. Art. 6, § 42, unlike the prior constitution, expressly delegates to the Legislature the power to determine how the lands taken and used in the exercise of *355 the levee servitude shall be “paid for.” Compare Act 314 of 1978, Act 676 of 1979, LRS 38:281. See Terrebonne v. South Lafourche Tidal Control, 445 So.2d 1221 (La.1984), Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896); Pumpelly v. Green Bay Co., 80 Wall. 166, 80 U.S. 166, 20 L.Ed. 557 (1872).
LSA-Const. Art. 6, § 42 contains language similar to that contained in Art. 16, § 6, of the 1921 constitution. That provision, in part, stated that
“Lands ... hereafter ... used ... for levees ... shall be paid for at a price not to exceed the assessed value of the preceding year ...
“If the district has no other funds or resources out of which such payment can be made, it may levy, on all taxable property situated therein, a tax sufficient to pay for said property ...”
We emphasize that Art. 6, § 42(A), of the 1974 constitution, in the first sentence states that “Notwithstanding any contrary provision of this constitution, lands ... used or destroyed for levees ... shall be paid for as provided by law,” and that the last sentence states that “if the district has no other funds or resources from which payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used ...”[3]
The effect of the changes in the language of the constitution were debated and deliberated by the constitutional convention of 1973.[4] The measure by which a landowner shall be paid for lands taken and used for levee purposes was left to the Legislature in the most recent constitution and the levee districts were mandated without limitation by the constitution to impose a tax sufficient to pay for lands so taken if no other funds or resources were available to the levee districts with which to pay.
This record shows that the Board is without funds or other resources except for maintenance of the levee system, and that it cannot, at this time, satisfy these judgments for $547,000, plus interest and attorney fees, which, with the expense of other appropriations of property, expose the Board to a liability of about 20 million dollars.[5] Notwithstanding our recognition of the plight of the Board and the failure of the Legislature to consider the constitutional imposition on the levee board and to provide funds for the increased compensation that it declared in the 1978 act was due certain landowners whose property is taken for levee purposes, the constitutional requirement cannot be ignored. Art. 6, § 42 expressly requires that if no other funds or resources are available from which to pay for lands used for levee purposes, the levee district “shall levy” a tax sufficient to pay for the lands so used.
A mandamus may issue where the law provides no relief by ordinary means or where the delay in obtaining ordinary relief *356 may cause injustice. CCP Art. 3862. Mandamus may issue against a public officer or body to compel performance of a ministerial duty. CCP Art. 3863. A landowner who, as a result of his lands being appropriated for levee purposes, is a judgment creditor of a levee board that is charged with imposing a tax to provide funds with which to pay for lands taken for levee purposes, should have the requisite special and peculiar interest to enforce performance of the express constitutional duty of the public body to levy a tax to pay for the lands appropriated. Compare League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980); Cleveland v. Martin, 29 So.2d 516 (La.App. 1st Cir.1947).
The Board’s contention that the limitation of LSA-Const. Art. 6, § 39, will not allow the Board to impose a tax on all lands within the district or taxes exceeding five mills, is answered by Art. 6, § 42, and has been answered in Munson v. Atchafalaya Basin Levee Dist, 8 So. 906 (La.1891). The special constitutional mandate requiring the levy of an assessment for a particular purpose (notwithstanding any contrary provision of this constitution) should not be constrained by constitutional restrictions on the general power to tax. LSA-Const. Art. 6, § 42; Munson, supra. See also Excelsior Planting & Manuf'g Co. v. Green, 1 So. 873 (La.1887). Conversely, the constitutional mandate should not be extended beyond its stated and logical bounds by judicial mandamus. We agree that the district court should have issued mandamus, but conclude, under the circumstances, that the mandamus is too broad in its language ordering the Board “to pay,” and directing alternative methods by which, and in what priority, the Board shall pay the judgments. We shall amend the judgment to correspond with the constitutional mandate.
LRS 38:281B(2)(b) states that if revenues of the levee board are sufficient, the board shall pay the landowner within one year of the actual use of his land. If the revenues are insufficient to pay, § 281B contemplates that the landowner shall be compensated when and if funds are appropriated by the Legislature, the board, or the federal government. LSA-Const. Art. 6, § 42 does not say when the landowner shall be compensated from the proceeds of the tax which shall be levied. In such circumstances, a reasonable time for payment is implied.[6]
Accordingly, we shall amend and recast the judgment: The Board of Commissioners of the Fifth Louisiana Levee District and the named defendants and their respective successors in office are hereby ordered to forthwith levy, in accordance with law, on all taxable property within the Fifth Louisiana Levee District, a tax sufficient to pay the judgments rendered in favor of each plaintiff:
A. In the case of Dudley Pillow, Jr., et al versus Board of Commissioners for the Fifth Louisiana Levee District, et al, in the amount of $332,914.70, together with interest thereon at the rate of seven percent per annum from July 6, 1978, until September 11, 1980; at the rate of ten percent per annum from September 12, 1980, until September 10, 1981; and at the rate of twelve percent per annum from September 11, 1981, until paid; together with 33⅛ percent of the principal, or $110,971.57, as attorneys’ fees to be taxed as costs, and all costs.
B. In the case of Robert Burney Long, Jr., et al versus the Board of Commissioners for the Fifth Louisiana Levee District, et al, in the sum of $214,525.00, together with interest thereon at the rate of seven percent per annum from April 13, 1978, through September 11, 1980; at the rate of ten percent per annum from September 12, 1980, until September 10, 1981; and at the rate of twelve percent per annum from September 11, 1981, un *357 til paid; together with 33⅛ percent of the principal, or $71,508.33, as attorneys’ fees to be taxed as costs, and all costs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that from the proceeds of the tax the said defendants shall pay the judgments immediately after receipt of the proceeds of the tax by the Board of Commissioners.
All costs assessable by law to appellant shall be paid by appellant.
As amended and recast, the judgment of the trial court is hereby affirmed.
AMENDED, RECAST, and AFFIRMED.

. The appropriation of the lands of plaintiffs occurred in 1978. Plaintiffs’ actions were filed in 1978 and judgments were rendered after trial in 1982. The Pillow judgment became final and executory in March 1984. The judgment in the companion case (Long) was not appealed sus-pensively, but only devolutively, and is executo-ry even though the devolutive appeal is yet pending. The Pillow judgment was for $333,-000. The Long judgment was for $214,000. Each judgment also awarded attorney fees. The estimated liability of the Board for all appropriations of property for levee purposes is $20,000,-000.

. "(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used or destroyed to be used solely in the district where collected.
“(B) Appropriation. Nothing in this Section shall prevent the appropriation of such property before payment.” Emphasis supplied.

. A continuous and effective levee system remains of vital importance to this state. The legal levee servitude and the compensation to be paid for its exercise have a most interesting history in Louisiana. Lieber v. Hamel, 446 So.2d 1240 (La.App. 2d Cir.1983), writ ref. See also 40 Tul.L.R. 233; 21 La.L.R. 476; 21 Tul. L.R. 496; 1 So.L.Q. 151. See also sections of former LSA-Const. of 1921, Art. 16; La. CC Arts. 459, 665, 456.

. See Committee Report in OFFICIAL JOURNAL OF THE PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF 1973 OF THE STATE OF LOUISIANA, July 6, 1973, at 29-30; 7 RECORDS OF THE LOUISIANA CONSTITUTIONAL CONVENTION OF 1973: CONVENTION TRANSCRIPTS, October 4, 1973, at 1604-1609; [hereinafter cited as RECORDS]; 8 RECORDS, November 8, 1973, at 2203-2216; 14A RECORDS: COMMITTEE DOCUMENTS, December 6, 1973, at 31; 14A RECORDS, January 8, 1974, at 616; 5. 14A RECORDS, January 11, 1974, at 53; 14A RECORDS, January 11, 1974, at 682.

. The Board’s answer to the mandamus action states in part that the "district is the sole constitutional tax base for payment of the judgment obtained in [Pillow] and all suits presently pending for [appropriation of lands] for levee and levee improvement purposes and is financially incapable of paying these judgments and that payment ... would impose an oppressive and wrongful tax burden [on] the taxpayers of the ... district.” There are approximately 34 cases pending against the Board for appropriation of lands for levee purposes, according to the Secretary of the Board.

. In mandamus actions to compel payment of judgments against public bodies, it has been held that the spread of payments over a reasonable period of time rests in the discretion of the court. See Borough of Fort Lee, N.J. v. U.S., 104 F.2d 275 (3d Cir.1939): King v. U.S., 100 F.2d 797 (5th Cir.1939); Garcia v. City of South Tucson, 135 Ariz. 604, 663 P.2d 596 (Ariz.App.1983).