**Dr. Abdullah MUHAMMED**

v.

**The BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY, et al.**

**Civ. A. No. 87–504–A.**

United States District Court,
M.D. Louisiana.

May 17, 1989.

Joanne Henig, Baton Rouge, La., for plaintiff, Dr. Abdullah Muhammed.

Winston G. Decuir, Asst. Atty. Gen., Cleveland R. Coon, Asst. Atty. Gen., Dept. of Justice, State of La., Baton Rouge, La., for defendants.

### RULING ON MOTION TO DISMISS

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion to dismiss filed on behalf of defendants. Timely opposition has been filed. The court finds that there is no need for oral argument. Jurisdiction is allegedly based upon 28 U.S.C. §§ 1331 and 1343.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights. Specifically, plaintiff alleges that he was terminated from his employment at South-

ern University based on his religious beliefs, that he was denied due process, and that his termination was in breach of a contract entered into between Southern University and Louisiana State University (it is not clear how plaintiff intends to assert the latter claim in this non-diversity action). Defendants are the Southern University Board of Supervisors, each member of the Board, both individually and in their official capacity, and Dr. Bobby Phills, the Dean of the College of Agriculture, both individually and in his official capacity.

Defendants now move to dismiss on the basis that: (1) Defendants are entitled to immunity from suit under the Eleventh Amendment; (2) the plaintiff has failed to state a claim of religious infringement; and (3) plaintiff had no property or liberty interest in his employment, and therefore, there was no due process violation.

## A. ELEVENTH AMENDMENT IMMUNITY

■ (1) Defendants assert that the court lacks subject matter jurisdiction over the civil rights claims against the Board of Supervisors, since plaintiff's suit is in reality a suit against the state of Louisiana, and is thus barred. Under the Eleventh Amendment to the United States Constitution, an unconsenting state is immune from suits brought in federal court by her own citizens as well as by citizens of other states. *Penhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *See, Anderson v. Phelps,* 655 F.Supp. 560, 563 (M.D.La. 1985).

Congress has the power under the enforcement provisions of the Fourteenth Amendment to abrogate sovereign immunity of the states and did so regarding Title VII claims. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Congress, however, has not abrogated the sovereign immunity of the states as to claims for deprivation of civil rights under the Civil Rights Acts. *Quern v. Jordan,*

440 U.S. 332, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Therefore, absent consent by the state or congressional action, a state is immune from suit.

In order to determine whether a suit against a state agency is in reality a suit against the state, the court "must examine the particular entity in question and its powers and characteristics as created by state law...." *Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 131 (5th Cir.1986); quoting, *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982).

In *Kurkiewicz v. State of La. Through Dep't of Health,* 560 F.Supp. 911 (M.D.La. 1983), this court adopted the approach to making such an examination which was set forth by the Fifth Circuit in *Tradigrain v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir.1983).

The court by looking to the state's constitutional, statutory and decisional law, must determine the status of the agency in question through a balancing of several factors. The court should consider (1) whether the agency has been granted the right to hold and use property, (2) whether it has express authority to sue and be sued in its corporate name, (3) the extent of its independent management authority, (4) the treatment of the agency by state courts, (5) whether the state is responsible for the agency's debt, (6) whether the agency is primarily concerned with local, as opposed to statewide problems, and (7) the degree of general financial autonomy of the agency.

*Kurkiewicz,* 560 F.Supp. at 913; citing, *Tradigrain v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir.1983).

Article 8, section 7 of the Louisiana Constitution of 1974 provides for the creation of a board of supervisors to supervise and manage Southern University. The members of the Board are appointed by the governor with consent of the senate. La. Const. art. 8, § 6(B). The Board has the power to sue and be sued. La.Rev.Stat. Ann. § 17:3351A(1). The Board is concerned with statewide concerns, serving

the educational needs of the people of Louisiana. La.Rev.Stat.Ann. § 17:3220. The Board may hold and use property. La.Rev. Stat.Ann. § 17:3351A(6), (7), (8) and (9). The functions of the Board are administered through a state agency, the Department of Education. La.Rev.Stat.Ann. § 36:642 B.

The source of the agency's funds is an extremely important characteristic to be examined in this analysis. The Board obtains its funding from the state, and Southern University obtains a majority of its funding from the legislature. As a state agency, any judgment rendered against the Board of Supervisors must be paid from funds appropriated by the Legislature. La. Const. art. 12, § 10.

Balancing the factors set forth in *Tradigrain,* the court concludes that the state of Louisiana is the real party in interest in plaintiff's suit against the Board of Supervisors of Southern University. Thus, the Eleventh Amendment bars any action against the Board of Supervisors.

Accordingly, the motion of the Board of Supervisors to dismiss is hereby GRANTED as to all claims, and the Board is DISMISSED as a defendant.

■ (2) Defendants also repeat the oft-pleaded, always rejected argument that the Eleventh Amendment shields the individuals from money damage claims. This topsey-turvey notion is predicated upon a state statute, LSA–R.S. 13:5108.1, which declares it to be the public policy of the state to "hold harmless and indemnify all officers and employees of the state from any financial loss ... court costs, judicial interest, and monetary damages, arising out of any claim, demand, suit, or judgment in federal court brought pursuant to the provisions of Section 1981 through 1983 of Title 42 of the United States Code by reason of alleged negligence or other act by an officer or employee...." Counsel argues that because the Legislature is authorized to appropriate funds to indemnify Dr. Phills for any judgment that might be rendered against him in this action, "[T]he state of Louisiana is the real party in interest herein."

The argument is patently and fatally flawed. It is *federal* not state law which shields the state from suit in federal court. Neither Louisiana nor any other state has the power to broaden the reach of the Eleventh Amendment to the United States Constitution. The fact that Louisiana, for reasons beyond the ken of this court, has voluntarily elected to indemnify those of its officers who deny or deprive people of their federal civil rights, in no way constitutes that officer as an "arm" or "alter ego" of the state for the Eleventh Amendment purposes. The individual defendant remains an individual defendant without regard to whether the state does or does not indemnify him and the plaintiff looks only to the defendant, not the state, for execution of the judgment.

This court has rejected the proposition in numerous cases, including at least one published opinion. *See, e.g. Anderson v. Phelps,* 655 F.Supp. 560, 564 (M.D.La. 1985). It is time for the attorneys for the state to come up with a new and plausible argument or to re-program their word processors so as to delete this plea in cases such as this.

**B. CLAIMS AGAINST THE INDIVIDUAL SUPERVISORS AND DR. PHILLS**

**(1) Official Capacity Claims**

■ Plaintiff alleges a claim against the individual board members and Dr. Bobby Phills, both in their individual and official capacities. "Official capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); quoting, *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978).

Under the fiction of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, official capacity actions for prospective relief are not treated as actions against the state. *See, Kentucky*

*v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3106, n. 14, 87 L.Ed.2d 114 (1985). Therefore, plaintiffs have been allowed to dodge the literal application of the Eleventh Amendment, and maintain private suits against state officials who have acted contrary to federal law. *See, Brennan v. Stewart,* 834 F.2d 1248, 1251–53 (5th Cir. 1988). Under *Ex Parte Young,* however, the court may only retain jurisdiction over official capacity claims for injunctive relief, and not official capacity claims for damages. *Brennan,* 834 F.2d at 1253. In this case, plaintiff prays for reinstatement and damages.

Accordingly, the motion to dismiss the damage claims against the individual defendants acting in their official capacity is hereby GRANTED.

### (2) Personal Capacity Claims

Individual or "personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham,* 105 S.Ct. at 3105. In a personal-capacity suit, it is enough to show that the official caused the deprivation of a federal right acting under color of state law. *Id.* Generally, an official in a personal-capacity action may be "able to assert personal immunity defenses, such as objectively reasonable reliance on existing law." *Id.*

In this case, the individual defendants plead the defense of qualified immunity in their answer, but do not state qualified immunity as a ground for dismissal in the motion. Because the individual defendants have not argued the applicability of qualified immunity, and because it is not patently obvious that the individual defendants are entitled to such a defense, the motion to dismiss the personal-capacity claims is inappropriate at this time.

Accordingly, the motion to dismiss the claims against the individual defendants in their personal capacity is hereby DENIED.

### C. FAILURE TO STATE A CLAIM

■ The individual defendants also move to dismiss on the basis that plaintiff has failed to state a claim upon which relief can be granted. Specifically, defendants con-

tend that plaintiff has failed to state a claim of religious infringement under the First Amendment, and that plaintiff had no property or liberty interest in his employment that would invoke due process. In the motion to dismiss and the accompanying memorandum, defendants allege many facts which are not contained in the pleadings. There are no supporting documents submitted to establish the truth of these allegations. Plaintiff has alleged that persons acting under color of state law caused his termination based on the open practice of his religion. Plaintiff has also alleged a due process violation. It is not clear from the face of the pleadings that plaintiff has failed to state a cause of action against the individual defendants. Therefore, as to the remaining claims for injunctive relief against the individual defendants in their official capacity, and the claims against the individual defendants in their personal capacity, the motion to dismiss for failure to state a claim upon which relief can be granted is inappropriate at this time.

Accordingly, the motion of the individual defendants to dismiss the remaining personal and official capacity claims is hereby DENIED.