PER CURIAM. Rehearing granted, judgment of district court set aside, and case remanded for new trial.

---

(63 South. 45.)

No. 19,869.

MOSS et al. v. HALL et al.

(June 14, 1913. Rehearing Denied June 30, 1913.)

*(Syllabus by the Court.)*

1. OFFICERS (§ 82*)—LEGALITY OF APPOINTMENT—INJUNCTION—RIGHT TO SUE.

Courts will not interfere by injunction to restrain persons from exercising the functions of public office, on the ground of the illegality of the law under which their appointments were made, in the absence of the state or parties in interest. High on Injunction (3d Ed.) § 1312.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 114; Dec. Dig. § 82.*]

2. COUNTIES (§ 196*)—INJUNCTION (§ 114*)—RIGHT TO SUE—TAXPAYERS—COMPLAINT.

"He who seeks to restrain improper or unlawful conduct on the part of public officers must allege sufficient facts to show that he has such an interest in the public welfare as to make him a proper party to prevent the commission of a public wrong. It will generally suffice that the persons seeking the injunction are residents and taxpayers. Thus it is held that complainants, who are voters and taxpayers in a county, are proper parties to enjoin unauthorized expenditures of county funds by a county judge. But to warrant the relief in behalf of the citizens and taxpayers against acts of public officers, it should be shown that plaintiff's rights will be greatly and irreparably injured by the acts which it is sought to enjoin, and unless this is shown the relief will be denied. And an injunction will not be granted to restrain county officers from removing their office to another location, at the suit of one who does not show himself to be a resident and voter of the county, and who shows no interest in the result of the controversy." Id. § 1321.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196;* Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

3. INJUNCTION (§ 114*)—REMOVAL—PERSONS ENTITLED TO SUE.

Patrons of a state institution of learning have no sufficient interest therein to enjoin a change of domicile of said institution by the Legislature of the state, in the absence of a constitutional provision fixing the domicile of said institution at or in a particular place.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

*(Additional Syllabus by Editorial Staff.)*

4. COURTS (§ 136*) — STATE COURTS — CIVIL DISTRICT COURT—JURISDICTION.

Under Const. 1898, art. 133, giving jurisdiction to the civil district court in certain enumerated cases and all other cases "except as hereinafter provided where no specific amount is in contest." such court had jurisdiction of a suit to enjoin the removal of a State University in accordance with a state statute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 375, 379, 392; Dec. Dig. § 136.*]

Monroe, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by E. O. Moss and others against Luther E. Hall and others. Decree for plaintiffs, and defendants appeal. Reversed and dismissed.

R. G. Pleasant, Atty. Gen., and Harry Gamble, Asst. Atty. Gen., for appellants. J. C. Henriques and H. L. Favrot, both of New Orleans, for appellees.

SOMMERVILLE, J. Plaintiffs, alleging themselves to be duly qualified electors and taxpayers of the city of New Orleans and state of Louisiana, and that some of them are pa-

trons of the Southern University, which was established in the city of New Orleans for the education of persons of color, and that defendants, members of the board of trustees of the Southern University, in pursuance of Act No. 118 of 1912, are about to destroy the corporate existence of said university, change its domicile, amend its charter, and remove the institution from the corporate limits of New Orleans, set up the unconstitutionality of said act of the Legislature on several grounds, and ask that an injunction issue to prevent defendants from carrying out the provisions of said act.

Defendants appeared and filed several exceptions, which exceptions were overruled. They then answered; and there was judgment in favor of plaintiffs, enjoining defendants from further continuing to exercise their functions as members of the board of trustees of the Southern University, and from administering and disposing of its property and affairs, under the provisions of said Act No. 118 of 1912. Defendants have appealed.

The gravamen of petitioners' complaint is contained in the following paragraph of their petition:

"Now your petitioners aver that they are taxpayers, citizens of the state of Louisiana and of the United States, and that some of your petitioners (24 in number) have children who are being educated at the said Southern University, and that they have a direct interest, as citizens of the state of Louisiana and of the United States and residents of the city of New Orleans, to prevent the removal of said institution from the said city of New Orleans, and of the carrying into effect of the null, void, and unconstitutional provisions of Act No. 118 of 1912."

[4] The first exception filed on behalf of defendants was that the Civil District Court, in which the suit was filed, was without jurisdiction ratione materiæ. This exception was properly overruled. Article 133 of the Constitution gives jurisdiction to the Civil District Court in certain enumerated cases, "and in all other cases, except as hereinafter provided, where no specific amount is in con-

test," etc. And article 85 of the Constitution gives to this court appellate jurisdiction in all cases where "a law of this state has been declared unconstitutional."

Defendant further excepted that plaintiffs were without interest, and cannot stand in judgment, and that their petition disclosed no cause of action.

The Constitution of 1879, under the caption, "Public Education," articles 224 to 232, inclusive, provides first for free public schools throughout the state to be established by the General Assembly. In article 230:

"The University of Louisiana, as at present established and located at New Orleans, is hereby recognized in its three departments, to-wit, the law, the medical, and academical departments, to be governed and controlled by appropriate faculties.

"The General Assembly shall from time to time make such provision for the proper government, maintenance and support of said State University of Louisiana, and all the departments thereof, as the public necessities and well-being of the people of the state of Louisiana may require, not to exceed $10,000 annually.

"The Louisiana State University and Agricultural and Mechanical College, now established and located in the city of Baton Rouge, is hereby recognized."

And provision was therein made for its maintenance.

These two universities were for the white youths of Louisiana, and in article 231 provision is made for a colored university in the following language:

"The General Assembly shall also establish in the city of New Orleans a university for the education of persons of color, provide for its proper government, and make an annual appropriation of not less than five thousand dollars, nor more than ten thousand dollars for its maintenance and support."

In accordance with the last-quoted article, the Legislature, in the year 1880, passed Act No. 87, entitled:

"An act to establish in the city of New Orleans a university for the education of persons of color; to provide for its proper government."

Said act named the university then established the "Southern University." It

directed how the board should be appointed from the several congressional districts of the state, etc. It further provided, in section 6:

"That said university shall be organized as a corporation under the general laws of the state of Louisiana, and the trustees thereof shall be capable in law to receive all donations, trusts, and bequests made to the 'Southern University,' and manage the same, to sue and be sued in courts of justice, and to do all other acts in the premises incident to such trustees."

There was an act of incorporation of the board of trustees of said university of date March 3, 1881, passed before W. O. Hart, notary public, which act is attached to and made part of plaintiffs' petition.

The Southern University was thus formed and made part of the educational system of the state of Louisiana. And the Legislature has regularly made appropriations from the general fund of the state for the support of said university until the present year.

In 1898 the Constitution of that year, in article 256, formally recognized said institution of learning as a part of the educational system of the state. That article is to be found under the heading: "Public Education." As in the former Constitution, it follows the articles relative to the public schools throughout the state. Article 255 has reference to the Louisiana State University and Agricultural and Mechanical College, now established and located in the city of Baton Rouge, which "is hereby recognized." And provision is therein made for its support.

In a subsequent paragraph in the same article the Tulane University of Louisiana, located in New Orleans, "is hereby recognized." The Legislature is not directed to make any appropriation whatever towards its support.

Article 256 recognizes and embraces within the educational system of the state other institutions of learning, in the following language:

"The Louisiana State Normal School, established and located at Natchitoches, the Indus-trial Institute and College of Louisiana, whose name is hereby changed to the Louisiana Industrial Institute, established and located at Ruston, and the Southern University, now established in the city of New Orleans, for the education of persons of color, *are hereby recognized;* and the General Assembly is directed to make such appropriations from time to time as may be necessary for the maintenance, support, and improvement of these institutions; provided, that the appropriation for the maintenance and support of the Louisiana Industrial Institute shall not exceed fifteen thousand dollars per annum, and that for the Southern University shall not exceed ten thousand dollars."

The Legislature is not specifically directed to make appropriations in favor of any of these last-named institutions; but the matter of appropriation is left to the General Assembly to be made—

"from time to time as may be necessary for the maintenance, support, and improvement of these institutions."

Plaintiffs argue that the words used in the Constitution of 1898, with reference to the several institutions of learning, and reading, "are hereby recognized," definitely fixes the location of each of these institutions, for all time, at the places named in the article, or until there has been a change of location made in and by the Constitution itself. We view these terms, referring to the present localities in which these institutions are, as merely descriptive of the institutions sought to be recognized as parts of the educational system of the state, and as not fixing their respective domiciles.

The Constitution of 1879 (article 231) fixed the domicile of the university for the education of persons of color in the city of New Orleans. But that Constitution is no longer in force. The Constitution of 1898 (article 325, par. 6) declares:

"The Constitution of this state, adopted in 1879, and all amendments thereto are declared to be superseded by this Constitution."

But under the first paragraph of said article 325 it is provided:

"That no inconvenience may arise from the adoption of this Constitution, and in order to

carry this Constitution into complete operation, it is hereby declared:

"First. That all laws in force in this state at the time of the adoption of this Constitution, not inconsistent therewith, and constitutional when enacted, shall remain in full force and effect until altered or repealed by the General Assembly, or until they expire by their own limitation."

The Constitution of 1879, in which the domicile of the Southern University was fixed in New Orleans, having been superseded by the Constitution of 1898, and the latter Constitution being silent as to the domicile of said Southern University, and Act No. 87 of 1880, which fixed the domicile of said Southern University in New Orleans, having been continued in force and effect until altered or repealed by the General Assembly, and the General Assembly of 1912 having altered or amended said act so as to change the domicile of said university to a rural section of the state, plaintiffs have no interest, right, or cause of action to enjoin the carrying out of said law.

As citizens of New Orleans, plaintiffs have no greater rights in and to the Southern University than have the citizens of other parts of the state. The university was organized and established for the benefit of all the citizens of the state; it has been maintained by appropriations from the state treasury; and the matter of the location thereof, since 1898, has been, and is, within the discretion of the General Assembly. It is not an institution owned in whole or in part by the city of New Orleans, or the citizens of that city. It is a state institution of learning.

Plaintiffs have not alleged fraud, manifest oppression, or gross abuse on the part of the General Assembly of 1912 in removing the domicile of the Southern University from New Orleans. They have not alleged fraud, manifest oppression, or gross abuse on the part of the board of trustees of said institution. On the contrary, they allege that said board is engaged in carrying out the terms of an act of the Legislature.

Their allegation that the act is unconstitutional, without showing that their private or personal interests have been or will be impaired in some way or to some extent, is not sufficient ground for the issuance of an injunction.

[1] A number of the plaintiffs allege that they are patrons of the university, in which institution their children are being educated. Such right is in common with the other colored citizens of the state, and it is not peculiar or special to plaintiffs. Their interests in the university are in no manner superior to the interests of those of the communities in the state outside of New Orleans.

Plaintiffs do not allege any pecuniary interest, beyond that which may be inferred as to the costs which they may have to incur in sending their children to said institution outside of New Orleans. But this matter of cost is also one in common with other persons who patronize schools of the state away from the immediate domiciles of the schools. They do not allege that they have made donations, gifts, or beneficences to said institution, with the agreement that the school was to remain in New Orleans.

[2, 3] Plaintiffs show no interest as taxpayers, as they do not allege that any portion of the taxes of the city of New Orleans have gone to the establishment or maintenance of said institution. They do not allege that the city of New Orleans contributed in any way towards the purchase of the ground and the erection of the building belonging to the said university, and which are ordered to be sold by the General Assembly. They do not allege any diversion of the funds of the university, in which they might be interested as citizens and patrons.

In the case of Handy v. New Orleans, 39

La. Ann. 107, 1 South. 593, we hold the law to be, and we have adhered to that ruling since, that:

"The sedate doctrine, after much contrariety of opinions and considerable vacillation among the courts, seems to be: That the right of property holders, or taxable inhabitants, is recognized to resort to judicial authority to restrain municipal corporations and their officers from transcending their lawful powers, or violating their legal duties, in any unauthorized mode which will increase the burden of taxation, or otherwise injuriously affect taxpayers and their property, such as an unwarranted appropriation and squandering of corporate funds, an unjustifiable disposition of corporate property, an illegal levy and collection of taxes not due or exigible, etc. We accept this conservative doctrine."

And that which we hold with reference to municipal corporations has equal application to other bodies charged with the administration of public functions. But property holders or taxable inhabitants must show that the acts complained of are unlawful, or that they, in some degree or manner, illegally increase the burdens of the complainants, or affect them or their property injuriously.

Plaintiffs have failed to allege and show any pecuniary interest on behalf of themselves and other citizens of the city of New Orleans, and having failed to allege any special or peculiar interests in themselves in retaining the domicile of the Southern University in New Orleans, and in the forming of the board of trustees of that institution, their petition discloses no right or cause of action for the issuance of an injunction to prevent the change of domicile of the Southern University from New Orleans to a rural section of the state, and to prevent the newly formed board of trustees from proceeding in the fulfillment of their duties under the law which called said board into existence.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed. It is further ordered that the injunction issued herein be dissolved and set aside, and that this suit be dismissed at plaintiffs' costs in both courts.

The Chief Justice concurs in the decree and reserves the right to write reasons.

MONROE, J., dissents.