BLANCHE, Judge.
Defendant-appellant, the State of Louisiana, through the Department of Education and Southern University, appeals the trial court judgment which ordered it to pay $1,500 in damages to plaintiff-appellee, Myrtle Parker, and $212 in damages to plaintiff-appellee, Henry Parker. Both judgments were to bear interest from date of judicial demand until paid. We affirm.
On the night of October 9, 1971, Vertís Breaux attended a Southern University football game at Baton Rouge, Louisiana. Breaux left the game during the fourth quarter, returned to his automobile, and began to exit the campus by traveling in an easterly direction on Louisiana Highway 408 (Harding Boulevard) toward the point where Highway 408 intersects U.S. Highway 61 (Scenic Highway).
Just west of said intersection, an overpass takes Highway 408 across a group of railroad tracks. Routinely, in order to facilitate the orderly exit of traffic on football nights, all westbound (incoming) traffic is halted by the East Baton Rouge Parish Sheriff’s Department at the intersection of Highways 408 and 61. This allows the use of all four lanes of the overpass for eastbound (exiting) traffic.
As Breaux reached the foot of the overpass, he was directed to proceed into the oncoming traffic lane of the overpass behind two other automobiles. All three automobiles entered single file into the inside-oncoming lane, and as they approached the summit they were confronted head-on by plaintiff, Myrtle Parker, in her automobile, traveling in a westerly direction.
The first two automobiles were able to veer into the neutral zone between the eastbound and westbound lanes to avoid a collision. However, the presence of the first two automobiles prevented Breaux from seeing the plaintiff, and the crash which gave rise to this litigation occurred.
It is uncontroverted that the plaintiff was in her proper lane of travel at the time of the accident. Breaux was in the wrong lane due solely to the direction of the University’s security officers. The height of the overpass prevented the parties from observing one another until they approached the summit.
Myrtle Parker, individually, and her husband, Henry Parker, as head and master of the community existing between them, sued Breaux, the State, through the Department of Education and Southern University, the Parish of East Baton Rouge and various other defendants.
Breaux instituted a separate suit against the plaintiffs, their insurer, State Farm Mutual Automobile Insurance Company, and East Baton Rouge Parish.
The cases were consolidated for trial and resulted in the following findings by the trial judge:
“Under these conditions the Court finds that the employees of Southern University were negligent. They diverted the normal flow of traffic to a different pattern setting up a dangerous condition without taking measures to prevent someone from being hurt. The Court can find no negligence on the part of Vertís Breaux; he drove as he was directed to do by an officer and there is no evidence to show that he could have averted the accident. The question of Mrs. Parker’s negligence is more difficult. She had been a resident of the area for some time and knew of the practice of diverting the traffic. However, at the time she crossed Scenic Highway there were no barricades and the officers she saw made no effort to stop her. While her failure to see the two cars ahead of Breaux that were driven into the median to avert collision is unexplained, nevertheless, the Court finds that she was not negligent under *491 the circumstances. The Court is not called upon to discuss any possible negligence on the part of the Sheriff’s office or of the deputies since no claim was made against them either in the main demand or in the third party petitions.” (Written Reasons for Judgment, Record, p. 122)
In view of the foregoing, judgment was rendered in favor of the plaintiffs, Myrtle and Henry Parker, and against the State, through the Department of Education and Southern University. All other claims were dismissed. Only the State has appealed, the sole issue being its liability.
The State argues that the University’s security officers were not negligent since it was their normal procedure after Southern University football games to divert exiting traffic into the oncoming lanes of the overpass. The State also suggests that even if the University were negligent, the failure of the Sheriff’s Department to halt the plaintiff at the intersection relieves the University of liability. Alternatively, the State argues that the plaintiff was contri^ utorily negligent and, therefore, barred from recovery.
The record reflects that at the end of each football game it was the responsibility of the East Baton Rouge Parish Sheriff’s Department to halt westbound traffic at the intersection of Highways 408 and 61. Thus, when football traffic began to exit, the University could safely utilize the oncoming lanes of the overpass. It could not be explained at the trial why the plaintiff was not halted by the Sheriff’s Department on the night in question. It was established, however, that there was no communication between the University’s security officers and the Sheriff’s Department regarding the exact moment that traffic would be halted at the intersection.
Lieutenant W. T. Bunch, of the East Baton Rouge Parish Sheriff’s Department, acknowledged that there was no set time to begin halting the westward flow of traffic onto the campus and that on the night in question there was no radio communication between his deputies and the University’s security officers on the opposite side of the overpass.
Lieutenant Bunch stated that his deputies ordinarily began halting westbound traffic when they could visually observe an increase in exiting traffic thereby signifying the close of the football game. Under this arrangement, he admitted that it was possible for some traffic to be caught between the intersection and the overpass at the moment that traffic was directed into the oncoming lane on the opposite side of the overpass.
The unrebutted testimony of the plaintiff established that there were no automobiles exiting in her lane of travel prior to Breaux and the other two vehicles directly ahead of him. It is also uncontroverted that no attempt was made to prevent the plaintiff from proceeding through the intersection and across the overpass.
DUTY
In view of the obvious danger of directing vehicles into the wrong lane of this or any other overpass, the University owed a duty to this plaintiff to take every precaution to insure that she was not traversing the overpass the moment that traffic was diverted into her lane. Stated another way, the risk of harm created by the procedure used to divert traffic across the overpass was so great that the University incurred a duty, under the circumstances, to ascertain whether or not all westbound traffic had cleared the overpass before allowing a wave of vehicles to ascend in the wrong lane.
BREACH
The University failed to prevent the plaintiff’s presence on the overpass at the time that they directed the use of all four lanes of travel on said overpass to expedite the departure of traffic from the *492 football game. By so doing, the University breached its duty to the plaintiff.
RISK
The risk sought to be avoided by imposition of the aforementioned duty was the very risk that occurred herein, that is, that a motorist such as the plaintiff, might be injured by another motorist who had been instructed to drive across the overpass in the oncoming lane. Since the University breached a duty which was designed to protect the plaintiff against the very risk that occurred, the University must bear the responsibility for that breach.
There is no merit to the State’s argument that the failure of the Sheriff’s Department to halt the plaintiff at the intersection superseded its negligence and, therefore, relieved it of liability. The duty of the University’s security officers was different and distinct from that of the Sheriff’s deputies. The Sheriff’s Department was required to halt all traffic at the intersection, whereas the University, in view of the fact that it was unaware of the precise moment that incoming traffic would be halted, owed a duty to this particular motorist to ascertain whether or not she had cleared the overpass before directing the exiting traffic into her lane. When viewed in this light, the alleged negligence of the Sheriff’s Department would not relieve the University of liability.
The State argues that the plaintiff was contributorily negligent for proceeding across the overpass as she did, since she admittedly was aware of the change in traffic pattern at the end of each football game. However, as noted, there was no set time for the traffic change to take place. Therefore, since the plaintiff was not halted at the intersection by the Sheriff’s Department, she was entitled to assume that traffic was not yet being diverted into her lane of travel. It was not the plaintiff’s responsibility to ascertain whether or not it was safe to proceed across the overpass. We, therefore, find as did the trial judge, that the plaintiff was not con-tributorily negligent for proceeding across the overpass after no attempt was made to stop or warn her that it was unsafe.
In conclusion, we find that the University’s security officers, by failing to prevent plaintiff’s presence on the overpass at the time they directed the use of all four lanes of travel thereon, breached a duty to plaintiff and that breach resulted in the harm complained of.
For the above and foregoing reasons, the judgment of the trial court is affirmed. The State, as appellant, must bear all costs of this appeal as can legally be assessed against it.
AFFIRMED.