**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-30732

Summary Calendar.

Clifton RICHARDSON, Plaintiff-Appellant,

v.

SOUTHERN UNIVERSITY;  Sheila R. Evans;  Ericka Collins, Defendants-Appellees.

Aug. 4, 1997.

Appeal from United States District Court for the Middle District of Louisiana.

Before DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This case presents the question of whether Southern University and Agricultural and Mechanical College (Southern) and its Board of Supervisors are entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution.  Clifton Richardson, Sr., sued Southern and two students for alleged federal civil rights violations and state-law defamation and false imprisonment. Richardson eventually dropped his claims against the two students.[1] Construing Richardson's suit as one against Southern's Board of Supervisors, the district court granted Southern's motion to dismiss, holding that Richardson's suit was barred as a matter of law under the doctrine of sovereign immunity.  Richardson appeals.

_____

[1]Richardson informed the district court at a status conference that he did not want to pursue his claims against the students.

1

Southern's Board of Supervisors has filed a motion to dismiss this appeal on the ground that sovereign immunity bars Richardson's federal and state-law causes of action. Richardson filed a motion for leave to supplement the record.

Although we have held that a number of governmental bodies within Louisiana are entitled to sovereign immunity,[2] we have yet to consider whether Southern and its Board of Supervisors enjoy such immunity from suit. Today we hold that they do. We therefore dismiss Richardson's appeal and deny as moot his motion to supplement the record.

BACKGROUND AND PROCEDURAL HISTORY

Richardson was charged by University police with two misdemeanor counts of sexual battery, obscenity, and two counts of simple assault. Sheila Evans and Ericka Collins were the complainants. A student disciplinary hearing before the University Judiciary Committee was held on October 27, 1992; Evans and Collins participated in the hearing. The Committee concluded that

---

[2]*See Laxey v. Louisiana Bd. of Trustees,* 22 F.3d 621, 623 (5th Cir.1994) (University of Southwestern Louisiana); *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 146-48 (5th Cir.1991) (same); *Darlak v. Bobear,* 814 F.2d 1055, 1059-60 (5th Cir.1987) (the Louisiana Department of Health and Human Services and Charity Hospital in New Orleans); *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 185-87 (5th Cir.1986) (the Louisiana Department of Wildlife and Fisheries and the Louisiana Wildlife and Fisheries Commission); *Fireman's Fund Ins. Co. v. Department of Transp. & Dev.,* 792 F.2d 1373, 1374-76 (5th Cir.1986) (the Department of Transportation and Development). *But see Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 131-32 (5th Cir.1986) (holding that parish school boards not entitled to Eleventh Amendment immunity); *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n,* 762 F.2d 435, 438-43 (5th Cir.1985) (holding that Greater Baton Rouge Port Commission not entitled to Eleventh Amendment immunity), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986).

Richardson was guilty of the charged offenses and recommended expulsion as the proper penalty for Richardson's violations. Richardson was informed of these facts by letter dated October 29, 1992. Richardson's administrative appeal was denied on March 30, 1993.

On April 4, 1995, Richardson (proceeding pro se) brought an *in forma pauperis* § 1983 suit in federal court against Southern University and the two students who participated in the disciplinary hearing. Richardson alleged due process violations in his student disciplinary hearings, verbal abuse from a faculty member, false information on teacher certification by a staff member, denial of a fair and reasonable recommendation concerning his job performance, false arrest, and cruel and unusual punishment. He also asserted state-law causes of action for defamation and false imprisonment against Southern and defamation against students Evans and Collins. Richardson sought $1,700,000 in compensatory damages and $3,000,000 in punitive damages.[3]

Southern University (represented by the Louisiana Department of Justice) filed a motion to dismiss the case on the grounds that Richardson's § 1983 and state-law false imprisonment causes of action were barred by sovereign immunity and that Richardson's

---

[3]Richardson claimed that his compensatory damages consisted of lost future earnings. According to Richardson, over a thirty-year period, he would have earned $30,000 per year working for the state police and $20,000 per year working as a teacher. However, Richardson's arithmetic is wrong because his alleged damages add up to $1.5 million and not $1.7 million.

state-law defamation action was time-barred.[4]  The district court,
treating Richardson's suit as one against Southern's Board of
Supervisors, agreed with Southern and dismissed all of Richardson's
claims.  This timely appeal followed.[5]

DISCUSSION

Southern's Board of Supervisors contends that we should
dismiss this appeal because Richardson's federal and state-law
claims are barred by the doctrine of sovereign immunity.[6]  We
agree.

I. ELEVENTH AMENDMENT IMMUNITY

We have shaped the contours of Eleventh Amendment immunity to
comport with the common-sense notion that a plaintiff cannot avoid
the sovereign immunity bar by suing a state agency or an arm of a
State rather than the State itself.[7]  " "The Eleventh Amendment to
the United States Constitution,' " we have observed " "bars suits
in federal court by citizens of a state against their own state or

---

[4]The district court did not address Richardson's false
imprisonment claim against Southern.

[5]On December 10, 1996, we denied Richardson leave to proceed
*in forma pauperis* in this appeal.  That same day, we also denied as
frivolous Richardson's motion for discovery of the reasons why this
court had not yet processed his appeal.

[6]In his brief on appeal, Richardson does not address the
Eleventh Amendment immunity issue.

[7]The Eleventh Amendment provides simply:

> The judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects
> of any Foreign State.

4

a state agency or department.' " *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 146 (5th Cir.1991) (quoting *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 185-86 (5th Cir.1986)); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-02, 104 S.Ct. 900, 907-08, 79 L.Ed.2d 67 (1984). Thus, even though Richardson did not name the State of Louisiana as a defendant in this case, Richardson's suit may nonetheless succumb to Eleventh Amendment immunity if the State is the real party in interest. *Edelman v. Jordan,* 415 U.S. 651, 653, 94 S.Ct. 1347, 1350, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

We have taken a case-by-case approach to determining whether a State is the real party in interest in suits brought against entities which appear to be alter egos of that State. In particular, we have said that " "[a] federal court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself.' " *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.,* 925 F.2d 866, 874 (5th Cir.) (quoting *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 727 (5th Cir.1982)), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). Six factors guide our determination of whether Southern and its Board of Supervisors are arms of the State of Louisiana, and they are as follows:

> (1) whether the state statutes and case law characterize the agency as an arm of the state;

> (2) the source of the funds for the entity;

5

(3) the degree of local autonomy the entity enjoys;

(4) whether the entity is concerned primarily with local, as opposed to state-wide problems;

(5) whether the entity has authority to sue and be sued in its own name;  [and]

(6) whether the entity has the right to hold and use property.

*Delahoussaye,* 937 F.2d at 147.[8]

Before turning to these factors, however, we first address whether sovereign immunity bars Richardson's federal *and* state-law claims.  As to Richardson's § 1983 claim, it is well established that only upon a showing that Congress expressly intended to abrogate sovereign immunity may we bypass the sovereign immunity inquiry in suits against States or their agencies.  *See Quern v. Jordan,* 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-47, 59 L.Ed.2d 358 (1979);  *McDonald,* 832 F.2d at 906 n. 7.  Congress has not expressly waived sovereign immunity for § 1983 suits.  *Quern,* 440 U.S. at 340-45, 99 S.Ct. at 1144-47;  *Voisin's Oyster House,* 799 F.2d at 186.  Richardson's § 1983 suit is therefore subject to the Eleventh Amendment bar.

The applicability of Eleventh Amendment immunity to Richardson's state-law claim presents a slightly different

_____

[8]We imported this "test" from our diversity jurisdiction case law, in which we applied these six factors to determine whether a governmental body could be considered a "citizen" or alter ego of a state.  *See PYCA Indus., Inc. v. Harrison County Waste Water Management Dist.,* 81 F.3d 1412, 1416 n. 2 (5th Cir.1996) (" "[T]he analysis of an agency's status is virtually identical whether the case involves determination of immunity under the Eleventh Amendment or a determination of citizenship for diversity purposes.' " (quoting *Tradigrain, Inc. v. Mississippi State Port Auth.,* 701 F.2d 1131, 1132 (5th Cir.1983))).

question.[9]  In *Hughes v. Savell,* 902 F.2d 376 (5th Cir.1990), we held that the plaintiff's state-law claims against an employee of the State of Louisiana were barred by sovereign immunity.  We analyzed Louisiana case law pertinent to the plaintiff's state-law based negligence cause of action and reasoned that despite the plaintiff's creative attempt at repackaging the nature of his suit, the plaintiff's claim was against the State of Louisiana and not the named defendant acting in his individual capacity.  *Id.* at 378-79.  Under these circumstances, we concluded that Eleventh Amendment immunity "bars such a suit in federal court since the action seeks recovery from the state based on the violation of state common law by the state's agent."  *Id.* at 379.

In this case, we need not engage in the *Hughes* analysis because Richardson has not sued any official from Southern University.  Rather, Richardson's state-law claims are against the University qua University.  Accordingly, because Louisiana has not waived its sovereign immunity for suits brought in federal court,[10] Richardson's state-law claims are also subject to the Eleventh Amendment bar.

In short, Richardson's federal and state-law claims rise and fall together.  And fall they must.

II. SOUTHERN UNIVERSITY AND ITS BOARD OF SUPERVISORS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

---

[9]The district court in this case dismissed Richardson's state-law defamation claim on the ground that it was time-barred under state law.

[10]*See* La. R.S. 13:5106A (West Supp.1997).

We first note a certain tension in the application of the *Delahoussaye* factors to cases involving Louisiana state universities. For purposes of analyzing Southern's claim to Eleventh Amendment immunity, Southern as an entity in and of itself cannot be meaningfully distinguished from Southern's Board of Supervisors, for the Board is the operative arm of the University. Therefore, in *Laxey* and *Delahoussaye,* we analyzed the functions of the governing board of the University of Southwestern Louisiana in our determination of whether the University was entitled to Eleventh Amendment immunity. *Laxey,* 22 F.3d at 623; *Delahoussaye,* 937 F.2d at 147-48.

This case, however, is not as straightforward as *Laxey* and *Delahoussaye* because (1) Richardson sued Southern University, yet the district court characterized the suit as one against Southern's Board of Supervisors, and (2) the Board of Supervisors filed the motion to dismiss this appeal. Because our analysis of Eleventh Amendment immunity is grounded in state law and because (as our analysis below demonstrates) Southern and its Board of Supervisors are viewed as one and the same under Louisiana law, we conclude that Southern University and the Board of Supervisors stand on the same sovereign immunity footing.

Now to the merits of Southern's Eleventh Amendment immunity claim. Although we have held that the University of Southwestern Louisiana is an arm of the State of Louisiana and therefore enjoys Eleventh Amendment immunity, *Delahoussaye,* 937 F.2d at 146-48, and that "[t]he majority of decisions concerning the eleventh amendment

8

status of state universities have concluded the institutions were arms of the state," *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 557 (5th Cir. Unit A 1982), we nonetheless point out that "each situation must be addressed individually because the states have adopted different schemes both intra and interstate, in constituting their institutions of higher learning," *United Carolina Bank,* 665 F.2d at 557. Consistent with the conclusion reached by one of our district courts,[11] we conclude that Southern and its Board of Supervisors are entitled to Eleventh Amendment immunity.

## A. Louisiana Statutes and Case Law Peg Southern as an Arm of the State

Southern University is a creature of state law and is run by a Board of Supervisors established in the 1974 Louisiana Constitution. LA. CONST. art. 8, § 7 (creating the Board of Supervisors of Southern University as a "bod[y] corporate"); La.R.S. 17:3216 (West 1982) (stating that Southern University system is "under the supervision and management" of the Board of Supervisors); *Moss v. Hall*, 133 La. 351, 63 So. 45 (La.1913) (describing the birth of Southern under Louisiana law); *see generally Mullins v. Louisiana*, 387 So.2d 1151, 1152 (La.1980) ("If the office is created by the legislature, or is established in the first instance by the constitution, it is a state office."). However, as we said in *Delahoussaye*, the fact that Southern was created under state law does not make Southern an arm of the State

---

[11]*See Muhammed v. Board of Supervisors of Southern Univ.,* 715 F.Supp. 732, 733-34 (M.D.La.1989).

of Louisiana.  937 F.2d at 147 & n. 5 (comparing Tulane University, which was created by state law, yet does not enjoy Eleventh Amendment immunity because Tulane is a private institution).  More is required.  We have reviewed the relevant statutes and cases and conclude that under state law, Southern is an arm of the State of Louisiana.  At least three characteristics of Southern's legal make-up compel this conclusion.

First, the Louisiana Department of Education administers the functions of Southern's Board.  La. R.S. 36:642B (West 1985); *Muhammed,* 715 F.Supp. at 734.  Second, the Louisiana Board of Regents (consisting of fifteen persons appointed by the governor with consent of the Louisiana senate) oversee Southern's Board to the extent that the Regents "plan, coordinate, and have budgetary responsibility for all public higher education...."  LA. CONST. art. 8, § 5(A) (West 1996).[12]  Third, although Louisiana courts have held that Southern's Board "is a separate and distinct legal entity from the State of Louisiana," *Varnado v. Southern Univ. at New Orleans,* 621 So.2d 176, 178 (La.Ct.App. 4th Cir.1993) (interpreting La. R.S. 17:1851A (West 1982)), Southern nonetheless is considered an agency of the State.  *See Varnado,* 621 So.2d at 178;  *Tiensuu v. Board of Supervisors of Southern Univ. & A & M College,* 385 So.2d 322, 324

---

[12]The Regents' authority over Southern's Board is not absolute, however.  *See* LA. CONST. art. 8, § 5(E) ("Powers of management over public institutions of higher education not specifically vested by this Section ... are reserved to ... the Board of Supervisors of Southern University....");  La. R.S. 17:3351A(10) (West 1982);  La. R.S. 17:3218 (West 1982);  *Baker v. Southern Univ.,* 604 So.2d 699, 702 (La.Ct.App. 1st Cir.) (noting the various powers of Southern's Board), *writ denied,* 606 So.2d 536 (La.1992).

(La.Ct.App. 1st Cir.), *writ refused,* 386 So.2d 356 (La.1980); *see also Parker v. Breaux,* 335 So.2d 488, 490, 492 (La.Ct.App. 1st Cir.1976) (stating that State of Louisiana is defendant in case in which employees of Southern University were found negligent).

*B. Southern's Funding Comes from the State of Louisiana*

There are two characteristics of this prong of the *Delahoussaye* test—the first is whether Southern receives state funds, and the second is whether or not money damages assessed against Southern are paid from the State treasury. Although Southern has the authority to raise funds by accepting donations, bequests, or other forms of financial assistance from private persons or the federal government, La. R.S. 17:3351(A)(2) (West 1982), Southern nevertheless receives funds from the State of Louisiana as an agency within the executive department.[13] *See, e.g.,* La. R.S. 38:2436A (West 1989) (earmarking $1,750,000 of bond revenues to Southern University); 38:2436B (West 1989) (earmarking $1,850,000 of bond revenues to Southern University, which is deemed "Under the Control of the State Board of Education); *Carter v. Fench,* 322 So.2d 305, 307 (La.Ct.App. 1st Cir.1975) (holding that the Student Government Association of Southern University in Baton Rouge was a student association which received from that University a portion of each student's registration fee, and those funds were considered "public funds'), *writ denied,* 325 So.2d 277 (La.1976)."

---

[13]Even those "elementary and secondary school[s] operated by" Southern are considered "public elementary or secondary school[s]" which receive funds from the State. La. R.S. 17:350.21A (West Supp.1997).

11

In addition, and perhaps most importantly, we have stated that "because an important goal of the eleventh amendment is the protection of states' treasuries, the most *significant* factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *McDonald v. Board of Miss. Levee Comm'rs,* 832 F.2d 901, 907 (5th Cir.1987) (emphasis added); *see also Jacintoport Corp. v. Greater Baton Rouge Port Comm'n,* 762 F.2d 435, 440-41 (5th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). Because Southern and its Board are considered an agency of the State of Louisiana, any money judgments rendered against Southern or its Board are payable from funds appropriated by the Louisiana Legislature. LA. CONST. art. 12, § 10; La. R.S. 13:5109B(2) (West 1991); *Muhammed,* 715 F.Supp. at 734.

*C. Southern Enjoys Limited Local Autonomy*

Although Southern's Board enjoys some degree of autonomy from the State of Louisiana (*see* footnote 12), the composition of Southern's Board is controlled by the State. For example, the governor appoints and the Louisiana Senate must approve the members of Southern's Board. La. R.S. 17:1831 (West 1982). In addition, as we have noted, Southern's Board is under the auspices of a Board of Regents whose members are also appointed by the governor and approved by the state senate. LA. CONST. art. 8, § 5(A). Finally, the Board's ability to raise funds by borrowing money or issuing notes, bonds, or certificates of indebtedness is somewhat circumscribed because such fundraising must meet with the approval

12

of the State Bond Commission. La. R.S. 17:3351A(4) (West 1982). These facts, taken together, sufficiently demonstrate that Southern's limited autonomy does not take it out from underneath the protective cloak of Eleventh Amendment immunity. *See Delahoussaye,* 937 F.2d at 147.[14]

*D. Southern is Concerned with State-Wide as Opposed to Local Concerns*

There can be no doubt that Southern's mission is predominantly (if not primarily) aimed at addressing matters of state-wide concern. Not only does Southern currently maintain state-funded campuses across the State (Baton Rouge, New Orleans, and Shreveport, La. R.S. 17:3216 (West 1982)), but it is also involved in a number of activities that benefit all citizens of Louisiana.[15]

---

[14]This conclusion is not inconsistent with the reasoning in our prior decision in *Jacintoport Corp.,* 762 F.2d 435, in which we stated the following:

> It is true that the vulnerability of the commissioners to the governor's pleasure militates against a finding of local autonomy. In our circuit, however, the determination of an agency's autonomy requires analysis of the "extent of the [entity's] independent management authority", *Huber[, Hunt & Nichols v. Architectural Stone Co.,* 625 F.2d 22, 25 (5th Cir.1980) ], not just the independence of the individual commissioners. Here, the record discloses that the Commission has great latitude to enter into contracts to negotiate sales and to formulate and exercise policy without additional approval.

*Id.* at 442. Although Southern's Board has limited autonomy, La. R.S. 17:3351A(6), (8), (9), the Board is nonetheless supervised by the Louisiana Department of Education and the Louisiana Board of Regents. LA. CONST. art. 8, § 5(A); La. R.S. 36:642B.

[15]*See* La. R.S. 17:3218 (West 1982) ("The corporate authority ... vested in ... the Board of Supervisors of Southern University ... extends to all the colleges and universities, branches, centers

13

That Southern is only one of many state-funded schools does not deprive it of Eleventh Amendment immunity. *See Delahoussaye,* 937 F.2d at 148.

*E. The Last Two Delahoussaye Factors—The Right to Sue or be Sued and the Right to Hold and Use Property*

Only Southern's Board, and not the University itself, can sue or be sued. *See* La. R.S. 17:3351A(1) (West 1982); *Muhammed,* 715 F.Supp. at 733; *see also Emoakemeh v. Southern Univ.,* 654 So.2d 474, 475 (La.Ct.App. 1st Cir.1995) (suing the State of Louisiana "through the Southern University Board of Supervisors"); *Marson v. Northwestern State Univ.,* 607 So.2d 1093, 1095 (La.Ct.App.3d Cir.1992) (holding that plaintiff had no cause of action against Northwestern State University, but rather against the Board of Trustees, who "under the constitution and statutes, is the right defendant under its supervisory powers" (citing LA. CONST. art. 8, § 6 (West 1996) and La. R.S. 17:3351(A)(1))). Similarly,

---

of learning, or extensions of such university system now existing or hereafter established."); La. R.S. 17:3220 (West 1982) ("[T]he Southern University system ... [is] established and maintained to serve the educational needs of the people of the state."); La. R.S. 17:3221 (West 1982) (designating Southern University as a "land grant college," which is authorized to receive "the benefits of the various acts of Congress"); La. R.S. 17:3396 (West Supp.1997) (noting the importance of high technology and establishing a nonprofit corporation which would work in concert with the Board of Supervisors of Southern University); La. R.S. 24:12 (West 1989) (authorizing Southern's Board of Supervisors to "require ... each higher educational institution over which they exercise supervision and management ... [to] participate in a program of providing technical and scholarly assistance to the legislature, its standing and statutory committees, and its legislative service agencies"); La. R.S. 30:2503A(2) (West Supp.1997) (stating that chancellor (or assignee) of Southern University has seat on Louisiana Environmental Education Commission).

14

Southern's Board has the right to hold and use property, but the University itself does not.  La. R.S. 17:3351A(6), (8), (9) (West 1982);  *Muhammed,* 715 F.Supp. at 734.

However, just because Southern's Board can be sued and can hold and use property does not mean that these final two factors weigh against a finding of sovereign immunity.  In fact, precisely the opposite is true.  First, as we have noted, Louisiana has not waived its immunity from suit in federal court.  *See* La.R.S. 13:5106A.  Second, and perhaps most importantly, money judgments against the Board are paid by the State of Louisiana.  *See, e.g., Delahoussaye,* 937 F.2d at 148 n. 6.  Accordingly, the final two *Delahoussaye* factors do not prevent us from finding that Southern and its Board of Supervisors are entitled to Eleventh Amendment immunity.

CONCLUSION

We conclude that all six *Delahoussaye* factors point inescapably to the conclusion that Southern University and its Board of Supervisors are arms of the State of Louisiana, that the State is the real party in interest in this lawsuit, and that Southern and its Board are entitled to Eleventh Amendment immunity. We therefore dismiss Richardson's appeal[16] and deny as moot his

---

[16]On February 20, 1997, another panel of this court dismissed as frivolous Richardson's appeal in a different action.  *See Richardson v. New Orleans Sewerage & Water Bd.,* 1997 WL 114966 (Feb. 20, 1997 5th Cir..) (per curiam) (unpublished).  We warned Richardson that "any additional frivolous appeals filed by him will invite the imposition of sanctions."  We do not conclude, however, that Richardson's appeal in this case is frivolous because until today, we had not yet decided whether Southern University and its Board of Supervisors enjoy Eleventh Amendment immunity.

motion for leave to supplement the record.

APPEAL DISMISSED.  MOTION FOR LEAVE TO SUPPLEMENT THE RECORD

DENIED.