United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 19, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 03-30169

---

IMOGENE KHAN, ET AL.,

Plaintiffs,

RICHARD EUGENE EARLY,

Plaintiff-Appellee,

VERSUS

SOUTHERN UNIVERSITY & AGRICULTURAL & MECHANICAL
COLLEGE BOARD OF SUPERVISORS;
BENJAMIN PUGH; GRADY MORRIS; JEANETTE WILLIAMS; SAM GILLIAM;
JAMES BROWN,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS CHANCELLOR OF THE SOUTHERN UNIVERSITY-SHREVEPORT CAMPUS;
JUANITA MORRIS,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Western District of Louisiana
m 5:00-CV-255

---

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Stating, without explanation, only that there are genuine issues of material fact, the district court denied the defendants' motion for summary judgment and to dismiss for failure to state claims upon which relief may be granted. Defendants appeal the interlocutory order because it denies qualified and sovereign immunity. We affirm in part, reverse in part, dismiss in part, and remand.

I.
A.

The former plaintiff, Imogene Khan, began working in the police department of Southern UniversitySSShreveport ("Southern") in 1990.[1] While at Southern, Khan was both the only white and the only female member of the Southern police force. Sam Gilliam, who served briefly as interim Chancellor until April 1, 1999, appointed her to the interim position of Lieutenant/Chief in January 1999.

During her tenure as interim chief, Khan applied for permanent appointment to that position. She was the most senior member of the force, and her performance evaluations were exemplary. When Khan became Chief on January 6, 1999, Ben Pugh, Southern's Vice-Chancellor, temporarily appointed Richard Early as Assistant Chief.[2] Pugh returned Early to regular duty in November 1999.

Defendant Grady Morris also applied for the position of Police Chief. He was a subordinate Police Officer II under Khan and Early until he was promoted to Interim Chief in November 1999 and permanent Chief in June 2000.[3] He was married to Juanita Morris, a classified civil service clerical worker.

When Southern appointed Khan Interim Chief, Early supported her efforts and directly

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Khan settled claims against the defendants; we discuss facts surrounding her claims only to the extent they are material here.

[2] According to Early's brief, he received an associate degree from Southern in 1997 and a bachelors degree from Louisiana Tech in 1998. He was also completing an MBA program at Central Michigan University. He served as a Southern police officer, and his evaluations were consistently strong.

[3] Early alleges the following facts in his brief: that he scored several points higher than Khan on the civil service exam, but she had more tenure; that Morris's performance history was inferior to that of Khan, whose evaluations reflected her superior record; and that Morris was permitted to resign rather than face disciplinary action for unacceptable conduct. Morris also worked at the Caddo Parish Sheriff's Office as a corrections officer and a communications/radio room operator; he resigned after being recommended for termination. He was subject to disciplinary action for sleeping on the job and being away from his work area on repeated occasions. He had two prior arrests: one for false imprisonment that was expunged in 1997, and one for issuing worthless checks.

On his civil service application for police chief, Morris apparently responded that he had never resigned from a job to avert termination. Southern learned that he had falsified his application in that respect.

associated with her. Early made his support for her public and also disclosed that he had observed race and sex discrimination against her.

Early alleges that he suffered severe retaliation as a result of his support for Khan by seeking to place him on the midnight shift and accusing him of stealing computers. Southern authorities ultimately divested Early and Khan of certain supervisory responsibilities, including the ability to discipline inferior officers and perform background checks.

Khan and Early took sick leave in October 1999, citing the stress and harassment they were experiencing. Early claims that Southern officials made it difficult for him to obtain his pay by questioning his exercise of sick leave. Southern terminated Early in March 2000, and Khan in May 2000.

In December 1999 Khan signed EEOC questionnaires containing specific claims of discrimination. She signed a formal charge that the EEOC sent to Southern in November of 2000. In September 2001 the EEOC issued Khan a right to sue letter.

### B.

Early makes a variety of allegations against Southern and against its officers in their official and personal capacities. These allegations include title VII claims based on race and sex discrimination, title VII claims based on race and sex retaliation, 42 U.S.C. § 1981 claims based on racial discrimination and retaliation, a variety of 42 U.S.C. § 1983 claims, 42 U.S.C. § 1985 conspiracy claims, and several 42 U.S.C. § 1986 claims.

The defendants challenge the order denying their motion to dismiss. They premise appellate jurisdiction for this issue on Eleventh Amendment and qualified immunity claims. They devote most of their argument to the substantive merits of the various claims. To the extent that this appeal is from an interlocutory order, we consider only those issues eligible for interlocutory review.

Generally we do not have jurisdiction over denials of motions to dismiss or motions for summary judgment, because such pretrial orders are not final decisions for purposes of 28 U.S.C. § 1291, which provides that courts of appeals have jurisdiction over appeals from final decisions of the district courts. There are, however, exceptions for certain types of immunity rulings.

### II.
### A.

The district court denied defendants' motion to dismiss and motion for summary judgment that were based on sovereign immunity.[4] The collateral order doctrine furnishes us with jurisdiction over an interlocutory appeal from a denial of a summary judgment motion asserting sovereign immunity.[5] The defendants contend that the denial of the motions to dismiss and for summary judgment was error. This is a legal question that we review *de novo. See Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998).

---

[4] The district court actually refused to dismiss all claims insofar as the defendants moved to dismiss them based on sovereign immunity. We merely identify title VII and § 1983 because they are the only two issues sufficiently briefed such that we may render an informed judgment.

[5] *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 411-12 (5th Cir. 2004).

## B.

Southern maintains that there is an Eleventh Amendment sovereign immunity bar to Early's title VII claims. The Supreme Court rejected Southern's position long ago, holding that a private citizen can sue a state for title VII damages in federal court.[6]

The two sides devote considerable space in their briefs to whether Louisiana has waived its sovereign immunity. This argumentation entirely misses the mark, for private citizens may pursue title VII actions in federal court not because Louisiana has waived sovereign immunity, but because Congress has abrogated it.[7]

## C.

Congress may abrogate Eleventh Amendment immunity, or states may waive it, but in this instance Louisiana has not waived its immunity in federal court for state law claims.[8]

Louisiana law provides that "[n]o suit against the state or a State agency or political subdivision shall be instituted in any court other than a Louisiana court." LA. R.S. 13:5106. Moreover, we are not permitted to interpret waiver of immunity in state law courts as a waiver of immunity in federal courts.[9] The inquiry, however, does not end there.

This court takes a case-by-case approach to determining whether a state is the real party in interest in suits brought against entities that appear to be alter egos of that state. *See Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997). A federal court "must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir.1982).

In deciding whether a suit against an entity is in reality a suit against the state, several factors must be determined: (1) whether the state statutes and caselaw characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold

---

[6] *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Usery v. La. ex rel. La. Dep't of Health & Hosp.*, 150 F.3d 431, 435 (5th Cir. 1998).

[7] *See Seminole Tribe v. Florida*, 517 U.S. 44, 55 (1996) (stating the circumstances under which Congress may abrogate state sovereign immunity). Denials of motions to dismiss and motions for summary judgment in the title VII context do not constitute final pretrial orders. *See Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 62 (5th Cir. 1996). We dismiss the appeal with respect to all title VII claims, except to the extent that those appellate claims sound in sovereign and qualified immunity. We therefore do not opine on either on (1) whether Early has complied with title VII's administrative requirements or (2) whether there are sufficient issues of material fact to preclude summary judgment with respect to title VII.

[8] Louisiana defines an employer as ". . . the (continued...)

[8](...continued)
state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation fo any kind to an employee." LA. R.S. 23:302.

[9] *See Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944); *Martin v. Univ. of Louisville*, 541 F.2d 1171, 1175 (6th Cir. 1976).

and use property.[10]  Although there is some language suggesting that there are situations in which Southern should not be treated as a state entity, we have held that it is entitled to Eleventh Amendment immunity if the state does not waive it.  See *Richardson*, 118 F.3d at 454-56.[11]

## D.

For the reasons discussed above, Southern is subject to suit only if Congress intended to abrogate state sovereign immunity.  Section 1983 does not abrogate Eleventh Amendment immunity, and Louisiana has not waived it. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).[12]  Any § 1983 suit against a defendant in his official capacity must therefore be dismissed.

## III.

Qualified immunity is appealable to the ex-

tent it turns on an issue of law.[13]  Such jurisdiction does not allow the reviewing court to reach *the merits* on an interlocutory appeal. *See Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002).

The test for whether qualified immunity applies asks (1) whether plaintiff has alleged a violation of a clearly established constitutional or statutory right and (2) if so, whether his conduct was objectively unreasonable in light of the clearly established law at the time the incident took place.  *See Felton*, 315 F.3d at 477.  The second prong of this task actually subdivides into two inquiries: (a) whether the allegedly violated rights were clearly established at the time of the incident and (b) whether the violators' conduct was objectively unreasonable in light of those rights. *See id.*

## A.

Qualified immunity serves to "shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively unreasonable in light of then clearly established law." *Thompson v. Upshur County, Tex*, 245 F.3d 447, 456 (5th Cir. 2001). Where a defendant pleads qualified immunity, the burden of proof shifts to the plaintiff.  *See Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) (internal quotations and citations omitted).

The standard of review for an interlocutory order denying a summary judgment motion sounding in qualified immunity differs somewhat from the standard usually applied to sum-

---

[10] *See Delahoussaye v. City of New Iberia*, 937 F.2d 144 (5th Cir.1991); *Tradigrain v. Miss. State Port Auth.*, 701 F.2d 1131 (5th Cir.1983) (making the analysis for purposes of diversity jurisdiction).

[11] Although Louisiana's assessment of whether Southern is a state agency is not binding on federal courts, it is worth noting that Article VIII, Sec. 7 of the Louisiana constitution considers the Southern University System a Louisiana state agency.  Southern is, under the constitution, a system under the control and management of its Board.

[12] Moreover, we do not reach the question whether Congress intended to abrogate state sovereign immunity for §§ 1981, 1985 and 1986, because those issues are inadequately briefed by both sides.  We do clarify, however, that certain state entities do in fact enjoy Eleventh Amendment immunity from both § 1981 and § 1983 claims. *See Loya v. Tex. Dep't of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989).

[13] *See Southard v. Bd. of Crim. Justice*, 114 F.3d 539, 548 (5th Cir. 1997) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

mary judgment motions. Ordinarily we review a summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmovant. *See Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). Because of our limited appellate jurisdiction over interlocutory orders, however, we cannot review whether the evidence "could support a finding that particular conduct occurred." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We must take as given the facts that the district court assumed when it denied summary judgment, and we determine whether those facts state a claim under clearly established law. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 471 (5th Cir. 1996).[14]

### B.

The individual defendants are victims of a sparingly worded order denying their motions. All the order states is that "genuine issues of material fact remain." We cannot sit as factfinder.

The district court makes no attempt to indicate for which motions those "issues of material fact remain." Our problem is that, to review an interlocutory order involving a denial of a summary judgment motion sounding in qualified immunity, we must take the facts as the district court took them, but the order does not reveal how the district court viewed the facts in relationship to each qualified immunity claim. We must therefore remand all questions involving qualified immunity (and not foreclosed by our sovereign immunity rulings),

because the factual predicates are not available.[15]

The appeal of the substantive title VII issues is DISMISSED for want of appellate jurisdiction. The order is REVERSED insofar as it denies immunity under § 1983 to defendants in their official capacities, and insofar as it denies sovereign immunity on state law claims. The order is AFFIRMED insofar as it denies summary judgment relating to title VII immunity claims. This matter is REMANDED as to claims of qualified immunity and for further proceedings as needed.

---

[14] For example, the panel may review matters such as (1) whether the right is clearly established and (2) to the extent that the relevant discrete, historic facts are disputed, the objective reasonableness of the defendants' conduct. *See Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (internal citations omitted).

[15] Specifically, we remand for more factual elaboration any qualified immunity claims in regard to §§ 1981, 1983, 1985, and 1986. We do not mean to suggest that immunity status turns on the same evidence for each statute, but merely that we lack the evidence we need to review meaningfully *any* qualified immunity determination under *any* standard. *See generally Johnson v. Jones*, 515 U.S. 304, 317-18 (1995) (stating conditions under which interlocutory appeal may be dismissed).